UNITED STATES v. CASTLE, GOTTHEIL & OVERTON (No. 1371).[1]

GERMAN WOOD PULP MANUFACTURED FROM WOOD CUT IN RUSSIA.

The expression in section 2, act of July 26, 1911, "being the products of Canada," describes and refers to wood pulp manufactured in Canada from pulp wood, without regard to the place or country where the wood grew or was cut. Balfour v. Sullivan (19 Fed., 578). The condition of free entry here was that the wood from which it was made must be entitled to free and unrestricted export and there was no intention to declare that the country of manufacture must also be the country of origin of the raw material. Under the favored-nation clause this German wood pulp made of wood cut in Russia was entitled to free entry.

United States Court of Customs Appeals, June 1, 1914.

APPEAL from Board of United States General Appraisers, G. A. 7532 (T. D. 34185). [Affirmed.]

*William L. Wemple*, Assistant Attorney General (*William A. Robertson*, special attorney, on the brief), for the United States.

*Comstock & Washburn* for appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

---

[1] Reported in T. D. 34554 (26 Treas. Dec., 1011).

BARBER, Judge, delivered the opinion of the court:

The merchandise, the dutiability of which is the question in this case, is 125 bales of bleached chemical wood pulp.

The collector at the port of New York assessed duty upon this pulp presumably under the provisions of paragraph 406 of the tariff act of 1909. The importers protested, claiming free entry under the provisions of section 2 of the act of July 26, 1911, entitled "An act to promote reciprocal trade relations with the Dominion of Canada, and for other purposes," and the provisions of what are commonly called "the most favored nation clause" in treaties subsisting between Prussia and other German States now composing the German Empire. The Board of General Appraisers sustained the protest.

No witnesses testified before the board, but the case was heard upon the papers and the following stipulation:

It is hereby stipulated and agreed by and between the parties hereto that the wood pulp, the subject of the protest above named, was manufactured in Germany from pulp wood grown and cut in Germany and Russia, but not in Finland, and exported directly to the United States from Germany, and that neither the wood pulp nor pulp wood were subject to any export duty, export license fee, or other export charge of any kind whatsoever (whether in the form of additional charge or license fee or otherwise), or any prohibition or restriction in any way of the exportation (whether by law, order, regulation, contractual relation, or otherwise) directly or indirectly.

It is unnecessary to consider or construe any treaty invoked by the importers, because it is agreed by counsel upon both sides, in view of the holding of this court in American Express Co. *v.* United States (4 Ct. Cust. Appls., 146; T. D. 33434) and in Cliff Paper Co. v. United States (4 Ct. Cust. Appls., 186; T. D. 33435) that the construction and effect to be given these treaties and said section 2 of the act of July, 1911, is such that if the wood pulp in this case had been manufactured from pulp wood cut in Germany the importation here would be entitled to free entry.

We proceed, therefore, to consider the sole remaining question, which is, Should duty be assessed on wood pulp manufactured in Germany from pulp wood cut in Russia, it appearing that neither the wood pulp nor the pulp wood were subject to any export duty, fee, or charge of any kind, or to any prohibition or restriction of export whatsoever?

This involves a consideration of said section 2 of the act of July 26, 1911, which we quote:

SEC. 2. Pulp of wood mechanically ground; pulp of wood, chemical, bleached, or unbleached; news print paper, and other paper, and paper board, manufactured from mechanical wood pulp or from chemical wood pulp, or of which such pulp is the component material of chief value, colored in the pulp, or not colored, and valued at not more than four cents per pound, not including printed or decorated wall paper, being the products of Canada, when imported therefrom directly into the United States, shall be admitted free of duty, on the condition precedent that no export duty, export license fee, or other export charge of any kind whatsoever (whether in the form of

additional charge or license fee or otherwise), or any prohibition or restriction in any way, of the exportation (whether by law, order, regulation, contractual relation, or otherwise, directly or indirectly), shall have been imposed upon such paper, board, or wood pulp, or the wood used in the manufacture of such paper, board, or wood pulp, or the wood pulp used in the manufacture of such paper or board.

It is agreed that, if under this section wood pulp manufactured in Canada from pulp wood cut elsewhere would be entitled to free entry, assuming the condition and tariff status of said wood pulp and wood to be correspondingly identical with the status and condition of the wood pulp and wood in this case, it follows that the wood pulp here is entitled to free entry; otherwise it is not.

. An examination of section 2 results in a further reduction of the issue to this single question, Does the term "being the products of Canada" employed therein require that the pulp wood from which the wood pulp is manufactured must be cut in Canada, must be the growth of its soil?

The Government strenuously contends for an affirmative and the importers with equal vigor for a negative answer to this question.

We have no doubt that the word "product" or "products" is often used to designate manufactured articles as well as those which are the produce of the soil. All lexicographers seem to recognize this fact.

As somewhat typical of the meaning given to the word "product" in the dictionaries, we quote from Webster's New International:

1. Anything produced, as by generation, growth, labor, or thought, or by the operation of involuntary causes; as the *products* of the season, or of the farm; the *p oducts* of manufactures; the *products* of the brain.

*        *        *        *        *        *        *

Syn. Product. Production. Produce.

Product is the general word for that which is produced in any fashion.

The word "manufactures" is undoubtedly quite as appropriate a word to apply to articles which have been manufactured, and the expression "manufactured products" would be equally or more explicit, depending upon the precise meaning desired to be conveyed; but we think the word "products" undoubtedly may properly be applied to and include manufactured articles, and, unless the contrary in some manner appears, that the expression in section 2 "being the products of Canada" describes and refers to wood pulp manufactured in Canada from pulp wood, without regard to the place or country where the wood grew and was cut.

As in principle supporting this view we refer to the case of United States v. Downing (146 Fed., 56). There the Circuit Court of Appeals, under a statute providing that—

If there be imported into the United States crude petroleum, or the products of crude petroleum produced in any country which imposes a duty on petroleum or its products exported from the United States, there shall in such cases be levied, paid, and collected a duty upon said crude petroleum or its products so imported equal to the duty imposed by such country.

held that the country in which the products of the crude petroleum were produced by manufacture was the country of their production without regard to the country in which the crude petroleum was obtained.

Of course, as pointed out by the Government, this decision was to the effect that the given articles made from crude petroleum were, in the sense of the statute, as products of crude petroleum, related to the country in which the crude material had been manufactured into such products. But if they were the products of crude petroleum in the manufacturing country they were also the products of that country, and they were its products although the raw material was not therein produced. See also United States *v.* Marsily (165 Fed., 186).

In Balfour *v.* Sullivan (19 Fed., 578), in Circuit Court, grain bags had been manufactured in this country out of material of foreign production. These bags had been filled with wheat produced in California, shipped to England, the contents removed, and the empty bags returned to California. It was claimed under these circumstances that the bags were not dutiable when so returned to this country. The statute provided that "grain bags the manufacture of the United States" might be returned to this country free of duty. The Government claimed these bags were not entitled to that privilege because they were not the manufacture of the United States, in that their raw material was of foreign production. It was held that these bags were the manufacture of the United States. This holding seems to have been affirmed in the Supreme Court. (See T. D. 8457.)

In G. A. 7172 (T. D. 31314), decided January 16, 1911, the Board of General Appraisers in a carefully considered opinion held—

that where the raw material is produced in one country and the process of manufacture is conducted in another, an article subjected to such manufacture may be considered the product of the latter country.

In 1884 (T. D. 6671), the Department of Justice held that rum made of materials of foreign origin was a manufacture of the United States. This view was adopted by the Treasury Department and instructions issued to the collector of customs to be governed thereby.

We proceed to a more careful consideration of said section 2 to ascertain if possible whether Congress used the expression "being the products of Canada" in a restricted sense as referring to products made from raw material of Canadian growth, as claimed by the Government, for, if so, the wood pulp manufactured from pulp wood cut in Russia is dutiable, and this examination is extended to other sections of the act of which section 2 is a part.

The opening paragraph of section 1 of the act declares that the duties therein mentioned shall be levied and collected upon articles that are the "growth, product, or manufacture" of Canada, and this language is several times repeated in the act.

The word "growth" of course limits the merchandise which it may describe to the product of the soil, and if Congress had intended

that this limitation should attach to the merchandise which was the subject of section 2 it would naturally be expected, in view of its previous care in selecting language to express its will, that Congress would have employed in said section some such term as "being manufactured from wood grown in Canada." No language of that express import, however, is to be found therein. The word used is "products," and these products are in fact manufactured articles. If, as was held in Balfour *v.* Sullivan, *supra*, grain bags made here of foreign material were the manufacture of the United States, clearly wood pulp made in Canada from foreign material must be the manufacture of Canada.

Nor, considered without regard to other portions of the act, do we find in section 2 any satisfactory indication that the merchandise therein given free entry is required to be a product of the soil of Canada. The merchandise itself is certain wood pulp, paper, and paper board. To such thereof as is within the condition precedent in all respects free entry is given.

This condition precedent is attached to *materials* only, and not to their place of origin, and the condition is such that such *materials* shall be possessed of the free unrestricted right of export. Acid is used in the manufacture of chemical wood pulp; sizing enters into the manufacture of paper, and yet it can hardly be supposed that Congress intended that these articles when employed in producing the merchandise named must also be made from raw materials whose origin was Canada. No language of the section expressly declares that the raw material must be of Canadian origin, and unless it be so required, the pulp wood from which the wood pulp in this case was made possesses all the attributes required by the condition precedent.

Neither do we find in the purposes to be accomplished by the section any sufficient indication of an intention to limit the meaning of the word "products," as claimed by the Government. Manifestly one purpose was to promote the free export of pulp wood to this country. It was also desired to encourage and promote the export to this country of the named manufactured products of pulp wood. The consumers of wood pulp, paper, and paper board were equally benefited by its free entry here whether the wood from which it was produced came from Canada or some other country. Congress provided as the declared condition of such free entry that the wood from which it was made must be entitled to free and unrestricted export without declaring that the country of manufacture must also be the country of origin of the raw material, and we see no reason to read into the statute anything beyond what we consider its plain meaning in this regard.

In the argument it is contended by the Government that in the case of Cliff Paper Co. *v.* United States, *supra*, we have impliedly

decided the issue here against the importers' contention. It is sufficient to say that the question here raised was not before us in that case, was not considered, and was not decided.

The judgment of the Board of General Appraisers is *affirmed*.

### DISSENTING OPINION.

DE VRIES, Judge: For the reasons set forth in the dissenting opinions in American Express Co. *v*. United States (4 Ct. Cust. Appls., 146; T. D. 33434) and in Cliff Paper Co. *v*. United States (4 Ct. Cust. Appls., 186; T. D. 33435) I dissent.